# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| ZACHERIAH S. TRIPP, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 09-6086-CV-SJ-FJG |
| GEORGE LOMBARDI[1], | ) |
| Respondent. | ) |

## ORDER

Pending before the Court is Petitioner Zacheriah S. Tripp's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 by a Person in State Custody. (Doc. No. 1). Petitioner is currently confined in the Jefferson City Correctional Center located in Jefferson City, Missouri. David Dormire is the Superintendent of the Jefferson City Correctional Center and is, therefore, the proper party respondent. Chris Koster, the Attorney General of the State of Missouri is also a proper party respondent.

Also pending are petitioner's Motion for an Evidentiary Hearing (Doc. No. 12) and petitioner's Motion for Discovery (Doc. No. 13). As a preliminary matter, the Court finds that petitioner's motion for evidentiary hearing should be **DENIED**, as petitioner has not demonstrated that the "actual innocence" exception applies, even accepting the contents of petitioner's affidavits attached to his traverse as true. See below. Further, to the extent that petitioner is seeking a hearing on any basis other than "actual innocence," petitioner has not demonstrated that the factual basis for his claims could not have been discovered

---

[1]George Lombardi is the Director of the Missouri Department of Corrections. In the response to the Court's Order to Show Cause, respondents indicate that Dave Dormire (Warden of the Jefferson City Correctional Center) and Chris Koster (Attorney General of the State of Missouri) are the proper party respondents. Hereafter, the Court will consider Dormire and Koster as the proper respondents in this matter.

earlier through due diligence; instead, it appears from the record and petitioner's habeas petition (Doc. No. 1) that the factual bases for his claims were all known in time for those claims to be presented in state court. See 28 U.S.C. § 2254(e)(2)(A)(ii).

Further, petitioner's motion for discovery is **DENIED**, as petitioner has not demonstrated good cause under 28 U.S.C. § 2254 Rule 6. Instead, it appears that petitioner is seeking to undertake a fishing expedition for records of "all juveniles jailed at the same time as [state's witness Jameson] Owens," as well as all physical evidence in the case, which presumably was available to petitioner at the time of trial.

The Court will turn to the Petition for a Writ of Habeas Corpus and consider the same, below.

**I. BACKGROUND.**

The Missouri Court of Appeals described the facts in this case as follows:

> Sarah McCoy, a fifteen year old young woman, lived with her parents near Gower, Missouri. She attended East Buchanan High School, where she typically ended her school day and arrived home at about 3:40 P.M. or 3:45 P.M. Sarah's father, George McCoy, came home from work shortly after four o'clock on the afternoon of December 3, 2001. Upon his arrival, he found a portable compact disc player (later identified as Sarah's) in his yard. On further inspection, he saw that it was scratched and scuffed. He subsequently discovered that both the front door to the house and its screen door were standing open. Sarah's backpack was sitting by a coffee table near the door, but she was not in the house. This was unusual, as Sarah would always close and lock the front door of the house after coming home from school, awaiting her parent's return.
>
> Sarah's mother arrived home a short time later, and both parents tried to locate their daughter. They contacted Sarah's boyfriend, who told them that he had seen her board the school bus to go home after school that day. He suggested that they contact Tripp, a fellow student at Sarah's school, who had been trying to persuade her to ride to school with him in his car during the previous week. Mr. McCoy went to Tripp's

2

> residence around 6:00 P.M. and spoke with Tripp, who said that he saw Sarah board a bus to go to a basketball game in West Platte, Missouri.
>
> The McCoys contacted law enforcement and reported that Sarah was missing. A search was conducted over the following two days. Her body was discovered in a creek surrounded by cornfields on the afternoon of December 5, 2001. Her wrists were bound by two types of wire, one of which was used in portable headphones, the other was often used as a type of speaker wire. She was unclothed from the waist down and her bra had been torn open in the center front.
>
> Further examination of her body revealed that she had bruises on her arms, lower legs, and face, and scratches on her lower back, buttocks, and legs. The scratches were long and linear, as if she had been dragged across the cornfield. Autopsy also revealed that she had been sexually assaulted prior to her death. There were also injuries and hemorrhaging in her eyes indicative of strangulation. The cause of Sarah's death was determined to be asphyxiation.
>
> Investigators interviewed Tripp on December 4. Tripp denied being at or near the McCoy residence anytime the previous day. In his statement, he claimed to have spent much of the afternoon and evening driving around town. At various points, he indicated when he saw various people and his belief that they had seen him during his meanderings that afternoon. The police were largely unable to verify the claims Tripp made in his statement, as most of the people he claimed he encountered denied having seen him that day.
>
> Tripp was arrested and charged with the offenses of first degree murder, kidnapping, as well as alternative counts of forcible rape and forcible sodomy. The case against Tripp was largely circumstantial, but did include DNA evidence obtained from hair samples taken from Tripp's vehicle which were consistent with Sarah's DNA. Tripp's first trial resulted in a mistrial due to a hung jury. He was retried and convicted by a second jury of the offenses of first degree murder, kidnapping, and forcible rape.

State v. Tripp, 168 S.W.3d 667, 670-71 (Mo. App. W.D. 2005).

In May 2003, petitioner was convicted for the felonies of murder in the first degree,

kidnaping and forcible rape in the Circuit Court of Buchanan County, Missouri. In June 2003, petitioner was sentenced to life without parole, 15 years, and life imprisonment to be served consecutively. Petitioner timely filed an appeal with the Missouri Court of Appeals, Western District. On appeal, petitioner asserted that the trial court erred in (1) refusing to suppress evidence from the state's DNA expert, or in the alternative, grant a continuance, due to the state's failure to timely disclose the results of DNA testing of a hair found in Mr. Tripp's car; (2) failing to suppress irrelevant testimony and evidence that the hard drive of Mr. Tripp's laptop computer had been "wiped" the evening that the victim, Sarah McCoy was kidnaped; and (3) overruling defense counsel's objection to testimony that a witness heard Mr. Tripp's brother say that their mother had been looking for Mr. Tripp for over two hours the evening that Ms. McCoy was kidnaped. In June 2005, the Missouri Court of Appeals, Western District rendered its opinion affirming petitioner's conviction and sentence. See State v. Tripp, 168 S.W.3d 667 (Mo. App. W.D. 2005). On August 30, 2005, petitioner's application for transfer to the Missouri Supreme Court was denied.

On November 15, 2005, pursuant to Missouri Rule of Criminal Procedure 29.15, petitioner filed a motion for post-conviction relief in the Circuit Court of Buchanan County, Missouri. Petitioner asserted that his constitutional rights were violated by the ineffective assistance of counsel by his attorney. In particular, petitioner alleged that his trial counsel was ineffective in (1) failing to object to hearsay evidence that Ms. McCoy had said that Mr. Tripp drove by her house, scared her, and "creeped her out," (2) failing to object to irrelevant testimony regarding Mr. Tripp's laptop computer; and (3) voluntarily turning over Mr. Tripp's laptop computer to the state. On June 7, 2006, petitioner's request for relief pursuant to Rule 29.15 was denied following an evidentiary hearing. The Missouri Court of Appeals, Western District, affirmed the denial of the post-conviction motion on April 22, 2008.

## II.    POINTS RAISED

Petitioner asserts ten grounds upon which he alleges he is being illegally incarcerated: (1) his right to due process of law under the Fourteenth Amendment was violated when the state failed to disclose exculpatory evidence, as required by Brady v. Maryland, 373 U.S. 83 (1963), showing that someone other than Mr. Tripp was responsible for the abduction, sexual assault, and death of the victim, Sarah McCoy; (2) counsel was ineffective for failing to adequately investigate the case by not having various items of evidence tested for DNA; (3) the trial court erred in denying the defense's motion to suppress the state's evidence regarding DNA testing of a hair found in Mr. Tripp's car, and further erred in denying the defense's request for a continuance; (4) counsel was ineffective in failing to object and renew his motion to suppress all evidence and testimony regarding the third round of DNA testing by Reliagene; (5) the trial court erred in admitting irrelevant evidence concerning Mr. Tripp's laptop computer; (6) the trial court erred in admitting hearsay evidence insinuating that Mr. Tripp was unable to account for his whereabouts during the time period in which Ms. McCoy was abducted; (7) counsel was ineffective when he failed to object to hearsay evidence that Ms. McCoy said that Mr. Tripp drove by her house, followed her, and behaved in a manner that "creeped her out"; (8) counsel was ineffective when he failed to object to Detective Mike Wilson's testimony about Mr. Tripp's laptop computer; (9) counsel was ineffective in turning over Mr. Tripp's laptop computer to the state; and (10) counsel was ineffective for failing to strike, either for cause or by peremptory challenge, venireperson Mike Cahalin, who was employed with the Missouri Department of Corrections, and when a matter of possible juror misconduct was raised by another juror, counsel should have asked the court to individually interview the jurors to determine whether any misconduct in fact occurred. Each ground for relief will be examined below.

## III. STANDARD

This Court will "entertain an application for a writ of habeas corpus in behalf of a

person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). An application for writ of habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). "In conducting a habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Accordingly, "'[a] federal court may not re-examine a state court's interpretation and application of state law.'" McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996) (quoting Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994)). Pursuant to 28 U.S.C. § 2254(e)(1), in habeas proceedings, the Court presumes state court findings of fact are correct unless the petitioner establishes, the respondent admits, or the record shows otherwise. Additionally, the petitioner may produce evidence that convincingly establishes that the state court's findings were erroneous. McDonald, 101 F.3d at 592 (citing Thompson v. Keohane, 519 U.S. 99, 116 S. Ct. 457, 463-64 (1995)).

Further, procedural restrictions, such as exhaustion and default, also limit the Court's review of substantively valid habeas corpus claims. These restrictions are discussed below.

**A.    EXHAUSTION**

Initially, a petitioner seeking relief pursuant to a federal habeas corpus action must establish that all claims presented by the petition are exhausted. "[H]abeas corpus . . . shall not be granted unless it appears that — (A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); see Luton v. Grandison, 44

F.3d 626, 628 (8th Cir. 1994) (stating that "[a]s a prerequisite to federal habeas corpus review, a petitioner must exhaust state remedies and present the same legal theories and factual bases to the state courts"). Therefore, a court should dismiss a petition asserting unexhausted claims. Indeed, even if the petition contains a mixture of exhausted and unexhausted claims, the district court should dismiss the entire action. Rose v. Lundy, 455 U.S. 509, 510 (1982).

At the time this federal habeas petition was filed, all claims in the petition were exhausted because petitioner has either fairly presented his claims to the Missouri state courts or because he is procedurally barred from presenting claims that he has not given the Missouri state courts the opportunity to review. See Coleman v. Thompson, 501 U.S. 722, 732 (1991) (defaulted claims meet the technical requirements for exhaustion). Therefore, there remain no unexhausted issues in the petition.

**B.      PROCEDURAL DEFAULT**

When a federal habeas corpus petitioner has failed to follow a state rule of procedure on appeal or on state post-conviction review, a petitioner is said to have procedurally defaulted on his claim. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Application of procedural default thus requires the federal district court, initially, to make two inquiries: (1) whether there is an "independent and adequate" state law basis for denial of petitioner's claims; and (2) whether petitioner can show cause for the procedural defect and prejudice by dismissal without reaching the merits. Additionally, if a court does not find cause and prejudice, it may still review procedurally defaulted claims

if it finds that dismissal on procedural grounds will be a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. 478, 495 (1986).

**1. Independent and Adequate State Law Basis.**

If the petitioner presented the claims supporting federal habeas relief in state court, the federal court will not apply procedural bar unless the state court unequivocally stated that the claims were denied on the basis of 'independent and adequate' state law. This is known as the 'plain statement' rule. The U.S. Supreme Court defined the 'plain statement' rule within the context of federal habeas actions in Harris v. Reed, 489 U.S. 255, 261-62 (1989). The 'plain statement' rule is as follows:

> [I]f it "fairly appears that the state court rested its decision primarily on federal law," this Court may reach the federal question on review unless the state court's opinion contains a "'plain statement' that [its] decision rests upon adequate and independent state grounds."

Id. at 261 (quoting Michigan v. Long, 463 U.S. 1032, 1042 (1983)). The Court concluded that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case "'clearly and expressly' states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263 (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985) (quoting Long, 463 U.S. at 1041)). Thus, any ambiguity will be presumptively resolved in favor of reaching the merits of petitioner's claims.

The 'plain statement' rule does not apply where the prisoner petitioning for federal habeas relief fails to present federal grounds for relief at the state level. Coleman, 501 U.S. at 735 n.1 (1991). Therefore,

> federal courts on habeas corpus review of state prisoner claims . . . will presume that there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion."

Id. at 734-35.

When a petitioner does not exhaust federal claims in state court, the federal court should determine whether the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. Id. If that state court would find the claims procedurally barred, an independent and adequate state ground exists for applying a procedural bar. Id.

**2. Cause and Prejudice.**

If a petitioner's claims for habeas corpus relief are procedurally barred from consideration by the district court, a petitioner may overcome that procedural bar if she can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Under the first exception, the U.S. Supreme Court has clearly stated that a petitioner must establish both cause and prejudice to avoid procedural bar. Murray v. Carrier, 477 U.S. 478, 495 (1986).

In Murray v. Carrier, the U.S. Supreme Court defined what constitutes "cause" for failing to meet the procedural requirements of state law. The Court found "that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 488. Further, the Court has stated that "'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." Coleman, 501 U.S. at 753 (emphasis in original).

In Murray, the Court defined the showing required to establish 'prejudice' as follows:

> [P]etitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions . . .' Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied

'fundamental fairness' at trial.

Murray, 477 U.S. at 493-94 (internal citations omitted).

**3. Fundamental Miscarriage of Justice or Actual Innocence.**

Finally, assuming that petitioner fails to establish cause and prejudice, he may still avoid procedural default upon the showing of a fundamental miscarriage of justice. Coleman, 501 U.S. at 750; Murray, 477 U.S. at 495-96. "To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, [the Supreme Court] explicitly tied the miscarriage of justice exception to the petitioner's innocence." Schlup v. Delo, 513 U.S. 298, 321 (1995). For that reason, this exception is also known as the "actual innocence" exception. Sawyer v. Whitey, 505 U.S. 333, 339 (1992). In order to demonstrate "actual innocence," the petitioner must show that in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Schlup, 513 U.S. at 322; House v. Bell, 547 U.S. 518, 537 (2006). A "habeas court must consider all of the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House, 547 U.S. at 538.

**IV.    DISCUSSION.**

**A.    ALLEGED BRADY VIOLATION**

Petitioner alleges that he has uncovered information regarding another possible suspect in the crime that was not disclosed to him by the government prior to trial. Petitioner alleges that Loren Deming phoned the "tips" hotline and reported that he suspected his cousin in the murder because he saw his cousin the day after the murder and his clothes and car were muddy. Deming also indicates that his cousin had scratches on his face and neck, and that a pair of headphones was missing from his cousin's

residence at the time of the murder. Deming indicates in his affidavit that he asked his cousin if he killed the girl, and the cousin did not deny it, but rather hung his head and walked out of the room. Deming also alleges that he told this same information to an unknown policeman when he was under arrest for failing to appear on a municipal charge. Petitioner alleges this information was never provided to the defense by the government at the time of trial. Petitioner further asserts, however, that his state post-conviction counsel was aware of the information presented in the Deming affidavit in time to present it in the state post-conviction litigation but declined to do so "because such information is largely hearsay and without corroboration." See Doc. No. 1, pp. 8-9.

As noted by respondent, petitioner did not raise this claim his state post-conviction litigation, and thus petitioner has defaulted on his available state court remedies. See Smith v. Murray, 477 U.S. 527 (1986); Gilmore v. Delo, 908 F.2d 385 (8th Cir.), cert. denied, 497 U.S. 149 (1990). Petitioner may not obtain federal habeas corpus relief on this defaulted claim unless he can show both cause and actual prejudice for his procedural default. Wainwright v. Sykes, 433 U.S. 72 (1977); Murray v. Carrier, 477 U.S. 478 (1986). Petitioner's petition and traverse do not demonstrate cause and actual prejudice for this procedural default; instead, petitioner admits that he knew of this claim in time to present it to the state courts, and failed to do so.

Petitioner claims however, that the information presented in Mr. Deming's affidavit (and the affidavit's of Deming's family attached to petitioner's traverse, Doc. No. 14, Exs. A, B, C, and G) demonstrate that petitioner is actually innocent. As mentioned above, in order to demonstrate "actual innocence," the petitioner must show that in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. House, 547 U.S. at 537. Although petitioner argues that the state's case against him was extremely weak (see Doc. No. 14, pp. 3 - 16), and speculates that Mr. Deming's cousin might have been a possible suspect for this crime, the Court

concludes that it cannot be said that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the continued existence of the evidence against petitioner that was presented at trial. As petitioner has defaulted on this claim, this ground for relief is denied.

**B.    INEFFECTIVE ASSISTANCE OF COUNSEL**

Several of petitioner's grounds for relief are predicated on the theory of ineffective assistance of trial counsel. To establish a claim for relief based upon ineffective assistance of counsel, petitioner must show that counsel failed to exercise the skill and diligence that a reasonably competent attorney would have exercised under similar circumstances. Thomas v. Lockhart, 738 F.2d 304, 307 (8th Cir. 1984). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). Petitioner must also demonstrate that he was prejudiced by the alleged incompetence of counsel by showing the existence of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

**1. Failure to adequately investigate DNA evidence**

Petitioner argues that counsel was ineffective in failing to have DNA testing done on certain items of evidence. Respondent notes that petitioner failed to present this claim in state court, and asserts that this claim is defaulted. Petitioner again asserts the actual innocence exception allows review of this claim; however, as mentioned above, the Court finds that petitioner has not demonstrated that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the continued existence of the evidence presented at trial.

Furthermore, the Court agrees with respondent that this claim is without merit, as the DNA evidence would not explain away the testimony of the victim's neighbor who saw

petitioner driving back and forth in front of the victim's home before her school bus arrived, saw him proceed towards the victim's home after the bus arrived, and then saw him drive off at a high rate of speed shortly thereafter; nor would it explain away petitioner's confession, his statements to his classmates, or the corn stalks trailing from his vehicle later in the evening (presumably after petitioner had left Ms. McCoy's body in a cornfield). Petitioner has not demonstrated Strickland prejudice. This ground for relief is denied.

**2. Failure to object and renew motion to suppress Reliagene testing**

Petitioner argues that counsel was ineffective in failing to object and renew his motion to suppress all evidence and testimony regarding the third round of DNA testing by Reliagene. Respondent notes that petitioner failed to present this claim in state court, and asserts that this claim is defaulted. Petitioner again asserts the actual innocence exception allows review of this claim; however, as mentioned above, the Court finds that petitioner has not demonstrated that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the continued existence of the evidence presented at trial.

Furthermore, the Court agrees with respondent that this claim is without merit, as petitioner has not demonstrated a reasonable probability that the outcome of the trial and appeal would have been different. As noted by the respondent, the jury heard the defense expert's criticism of the state's DNA evidence, and there is no reason to believe that a continuance permitting counsel to have more time to consult with his expert prior to cross-examining the state's expert would have changed the outcome. Petitioner has not demonstrated Strickland prejudice. This ground for relief is denied.

**3. Failure to object to hearsay evidence**

Petitioner argues that trial counsel was ineffective for failing to object to hearsay evidence that Ms. McCoy said that Mr. Tripp drove by her house, followed her, and

13

behaved in a manner that "creeped her out." Specifically, petitioner argues that the testimony of state's witnesses Courtney Noll and Justin Skeeba should have been objected to in this regard. Petitioner argues that his counsel did not perform as a reasonably competent attorney, and his deficient performance prejudiced petitioner. However, at petitioner's 29.15 hearing, deposition testimony of petitioner's trial counsel was presented. Trial counsel indicated that he had viewed the physical evidence, which included no signs of forced entry and no signs of a struggle inside the house, as being inconsistent with the victim fearing her attacker. Therefore, it was his belief that the testimony of Noll and Skeeba that the victim feared and disliked petitioner aided his defense. See Doc. No. 6, Ex. 26, pp. 43-44. The 29.15 court further found that the admission of this evidence resulted in no prejudice, as numerous other witnesses established through admissible evidence that petitioner was stalking the victim, was obsessed with the victim, and petitioner had made threats to the victim in reaction to her rejecting his advances. Doc. No. 6, Ex. 26, p. 44. The Court agrees with the findings of the state courts that petitioner has failed to demonstrate that counsel did not perform as a reasonably competent attorney under Strickland. Furthermore, petitioner has not demonstrated Strickland prejudice. Petitioner's point is denied.

**4. Failure to object to Detective Mike Wilson's testimony about Mr. Tripp's laptop computer**

Petitioner argues that trial counsel provided ineffective assistance when he failed to object to Detective Mike Wilson's testimony about Mr. Tripp's laptop computer. Petitioner argues that testimony that the computer had been "wiped" was inadmissible, because the state did not establish that the computer ever had anything on it that would connect Mr. Tripp to the charged offenses. Petitioner therefore argues that the testimony had no probative value but was highly prejudicial in that it suggested the petitioner had destroyed incriminating evidence.

14

The 29.15 court and the Missouri Court of Appeals found that the direct and circumstantial evidence against petitioner was strong, and there was no reasonable probability that the outcome of the case was changed by the admission of evidence about Tripp's laptop computer. See Doc. No. 6, Ex. 26 at 44-54, Ex. 29 at 6-8. This Court agrees with the Missouri courts that petitioner has not demonstrated Strickland prejudice. Therefore, this point is denied.

### 5. Turning over Mr. Tripp's laptop computer to the state

Petitioner suggests that his trial counsel was ineffective for turning over petitioner's laptop computer to the state without forcing the state to get a subpoena. From the record below, it appears that two warrants had previously been issued for the computer; however, the computer had not been seized as it had been turned over to petitioner's previous counsel by petitioner's parents. When trial counsel came into possession of the computer, he learned that search warrants had been issued for the computer, had it examined by an expert, and after learning that it contained nothing counsel viewed as incriminating, turned it over to the government. See Doc. No. 6, Ex. 26 at 44-45. The Missouri courts found that this was sound strategy by counsel, and that there was no reasonable probability the outcome of the trial would have been changed had counsel not turned the laptop computer over to the state. See Doc. No. 6, Ex. 26 at 44-54, and Ex. 29 at 6-10. This Court agrees with the Missouri courts that petitioner has not demonstrated Strickland prejudice. Therefore, this point is denied.

### 6. Failure to strike venireperson Mike Cahalin

Petitioner indicates that counsel was ineffective for not moving to strike venireperson Mike Cahalin, who worked for the Department of Corrections. As noted by respondent, this claim was not presented to the Missouri state courts. Therefore, this claim is defaulted, and petitioner has not demonstrated cause and prejudice sufficient to overcome default, nor has he demonstrated actual innocence. Therefore, this claim must be denied.

Further, the Court agrees with respondent that the claim is without legal merit, as petitioner has not demonstrated Strickland prejudice. Further, to the extent that petitioner is arguing that Mr. Cahalin engaged in juror misconduct by failing to notify the court and the parties of nature of his employment during voir dire, that claim is belied by the transcript of the trial in this matter, which indicates that Mr. Cahalin indicated his employment on the jury questionnaire used in the underlying trial. See Transcript, Doc. No. 6, Ex. 16, pp. 3052-53. This point is denied.

**C.    DENIAL OF THE DEFENSE'S MOTION TO SUPPRESS OR FOR CONTINUANCE REGARDING THE STATE'S EVIDENCE AS TO DNA TESTING OF A HAIR FOUND IN MR. TRIPP'S CAR**

Petitioner asserts that the trial court erred in denying his motion to suppress the state's evidence regarding DNA testing of a hair found in Mr. Tripp's car, and further erred in denying the defense's request for a continuance. Petitioner asserts that the state did not disclose its expert's results in a timely fashion, thus preventing the defense from effectively cross-examining the state's expert, Gina Pineda, and contesting the results. Ms. Pineda conducted testing after the first trial (which ended in a hung jury) that indicated that although a hair found in petitioner's car was not Ms. McCoy's, Ms. McCoy's DNA was found on the surface of the hair. Ms. Pineda's report was dated April 15, 2003. On April 23, 2003, the defense moved to suppress this report or in the alternative for a continuance. The trial court denied these motions, but ordered the state to turn over all discovery requested by the defense by April 28, 2003, and to produce Ms. Pineda for deposition by April 29, 2003. The state began presenting its case on Monday, May 5, 2003, but defendant's counsel did not receive all of the data underlying Ms. Pineda's opinions until Wednesday, May 7, 2003 (when the last 17 pages of the raw data were presented to counsel). Petitioner asserts that by the time the defense's DNA expert had fully reviewed the data underlying Ms. Pineda's conclusions, Ms. Pineda had already testified and returned home to Louisiana. Petitioner asserts that the state should have been held

16

accountable for its discovery violations, and that petitioner's constitutional rights to due process, to a fair trial, and to present a defense under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated.

As noted by respondent, this claim was unpreserved because counsel did not reassert his complaint as to the government's actions when the last 17 pages of discovery were delivered after trial had already begun, nor did counsel object when the expert testified. Upon review, the Court of Appeals found that this claim did not rise to plain error. State v. Tripp, 168 S.W.3d 667, 674-75 (Mo. App. W.D. 2005). In particular, although the Missouri Court of Appeals found "[t]here appears to be little question that the State failed to comply with discovery," id., defendant failed to make any showing regarding what additional questions he would have posed to Pineda, nor did he articulate how he was unable to confront Pineda through the testimony of his own expert Dr. Stetler because the discovery had not been received in a more prompt manner. Id. at 674.

Although petitioner argues that the state's discovery violation rises to the level of a Brady violation, this Court disagrees. As noted by petitioner, U.S. v. Barraza Cazares, 465 F.3d 327, 334 (8th Cir. 2006), provides that exculpatory evidence must be disclosed in time for the defendant to use it. However, after reviewing the underlying proceedings, the Court cannot conclude that the defense was not given the information in adequate time to use it during the proceedings. The defense's expert, Dr. Stetler, testified extensively on Wednesday, May 14, 2003, regarding the conclusions in Pineda's report and was able to rebut Pineda's testimony, demonstrating that the defense was able to use the exculpatory evidence during the proceedings. Further, as noted by respondent, petitioner could have recalled the state's expert if he thought it critical to confront the state's expert with the defense expert's opinions informed by every piece of data. The Court further finds that the decision not to completely exclude the testimony of the state's expert did not make the entire trial fundamentally unfair so as to demonstrate a denial of due process. See

17

Anderson v. Goeke, 44 F.3d 675, 678-80 (8th Cir. 1995). This point is denied.

**D.    ADMISSION OF EVIDENCE CONCERNING MR. TRIPP'S LAPTOP COMPUTER**

Petitioner argues that the trial court erred in admitting irrelevant evidence concerning petitioner's laptop computer. Petitioner indicates that the state presented evidence that 160 files were accessed, modified or deleted between 7:00 and 8:00 p.m. on the day Ms. McCoy was kidnaped, and 327 files were accessed at midnight. The state's computer expert also testified that Microsoft Office had been uninstalled on the same date. A large portion of unallocated space on the hard drive was filled with zeroes, from which the state's expert concluded that a wiping program had been used to overwrite information on the hard drive. Petitioner notes that the state did not present evidence showing that anything incriminating had ever been on his computer; therefore, petitioner argues that the testimony regarding his computer had no probative value, and was simply used as a ploy to convince the jury that he had something to hide.

Respondent notes that the Court of Appeals reviewed this claim for plain error because petitioner did not object to the admission of the evidence at trial. State v. Tripp, 168 S.W.3d 667, 675-78 (Mo. App. W.D. 2005).[2] The Missouri Court of Appeals found that admission of this evidence did not rise to the level of plain error. See id. This Court agrees with respondent that the state court had no duty to *sua sponte* exclude evidence that the defense did not object to. See Carter v. Armontrout, 939 F.2d 1294, 1297 n.2 (8th Cir. 1991). Further, the Court agrees that petitioner has not demonstrated a due process violation, as petitioner cannot demonstrate both an evidentiary impropriety (i.e., an improper ruling by the trial court) and that absent the impropriety the outcome of the trial would have been different. See Anderson v. Goeke, 44 F.3d 675, 678-80 (8th Cir. 1995). This point is denied.

---

[2]Petitioner's counsel, however, objected to admission of this evidence in a motion in limine filed prior to trial.

**E.   ADMISSION OF HEARSAY EVIDENCE INSINUATING MR. TRIPP WAS UNABLE TO ACCOUNT FOR HIS WHEREABOUTS DURING THE TIME PERIOD IN WHICH MS. MCCOY WAS ABDUCTED**

Petitioner alleges that the trial court erred in allowing a witness to testify that she heard petitioner's brother tell petitioner that their mother had been looking for petitioner for two and one half hours. As noted by the Missouri Court of Appeals, this claim was not properly preserved in petitioner's motion for a new trial, and the Court of Appeals reviewed only for plain error. State v. Tripp, 168 S.W.3d 667, 678-80 (Mo. App. W.D. 2005). The Missouri Court of Appeals noted that the trial court instructed the jury that the testimony was not to be considered for the truth of the matter asserted, but only as context for the response of petitioner (who, when asked by his brother as to his whereabouts, responded, "shut up"). The Court of Appeals further found that a jury is presumed to follow such a limiting instruction, and that petitioner's case was not prejudiced in any event, as his theory of the case was that he had been driving around in other areas of the community when the crime occurred. This Court finds that the state court's determination is a reasonable one that is entitled to deference under § 2254(d). This point is denied.

## V. CONCLUSION.

Accordingly, for the above stated reasons, it is hereby ORDERED that:

1) Petitioner's Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is DENIED;

2) Petitioner's Motion for Discovery (Doc. No. 13) is DENIED; and

3) Petitioner's Motion for Evidentiary Hearing (Doc. No. 12) is DENIED.

**IT IS SO ORDERED.**

Date: 05/13/10  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**  
Fernando J. Gaitan, Jr.  
Chief United States District Judge